UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN JAMES O'DONNELL,

        Petitioner,

                                                Case No. 5:03-cv-72

v.

                                                Hon. Wendell A. Miles

DAVID GUNDY,

        Respondent.

_____/

OPINION AND ORDER APPROVING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

        This matter is before the court on Petitioner Benjamin James O'Donnell's Objection to United States Magistrate Judge Hugh W. Brenneman, Jr.'s Report and Recommendation (R&R) of January 8, 2007, which recommended Petitioner's petition for writ of habeas corpus be denied because the grounds he raises for habeas relief are procedurally defaulted or plainly without merit.

        This court is required to make a de novo review upon the record of those portions of the R&R to which specific objections have been made. 28 U.S.C. § 636(b)(1)(B). The court may accept, reject or modify any or all of the Magistrate Judge's findings or recommendations. Id.

        The magistrate judge found that nine of petitioner's eleven grounds for relief were procedurally defaulted. Petition raises several objections to the magistrate judge's procedural default analysis. However, with regard to each of the nine procedurally defaulted claims, the magistrate judge proceeded to review each claim on its merits. While the court agrees that the claims are procedurally defaulted, that conclusion was not the basis for determining that

Petitioner was not entitled to a writ of habeas corpus.

Petitioner objects to the Magistrate Judge's findings that the eleven claims are without merit. He cites copious case law in support of statements of the law, but points to no facts in the record showing that the magistrate judge incorrectly applied the legal principle to his factual situation. "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). As one example, for his first ground for habeas relief Petitioner claims he was denied the right to be free from double jeopardy by being convicted of armed robbery and assault with intent to commit murder. He cites numerous cases that recognize and discuss the proscription against double jeopardy. He fails to present any facts showing that the Michigan Court of Appeals incorrectly applied federal law when it concluded that Petitioner's convictions did not amount to double jeopardy under its previous holdings that offenses which are "distinct offenses in law and in fact" do not place a defendant in double jeopardy. People v. Harding, 506 N.W.2d 482, 506 (1993). The Double Jeopardy Clause protects defendants against cumulative punishments for convictions on the same offense. Ohio v. Johnson, 467 U.S. 493, 500 (1984). However, "a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause." Albernaz v. United States, 450 U.S. 333, 344 n.3 (1981).

The court will address Petitioner's more specific objections to the magistrate judge's findings pertaining to grounds two, nine, ten, and eleven.

Petitioner's prosecution arose from the theft of a pair of boots from a Battle Creek Meijer

store by Petitioner and two co-defendants. Meijer security guards followed the three men out of the store and confronted them in the parking lot. Petitioner drew a handgun, pointing it at the head of one of the guards. A co-defendant took the gun from Petitioner and began firing at the guards. While Petitioner was housed at the Calhoun County jail awaiting trial, he escaped and fled to Indiana, where he was eventually apprehended. Petitioner was convicted of armed robbery, assault with intent to commit murder, felony-firearm, and carrying a concealed weapon.

### Ground II

Petitioner's second ground for relief is that the trial court violated his due process rights by denying his motion to dismiss based upon the assertion that police failed to seize exculpatory evidence. He contends that a videotape of the Meijer parking lot would show that he did not hand the gun to his co-defendant, but rather the co-defendant grabbed the gun away from him. The tape was not seized as evidence. A failure to seize potentially useful evidence does not constitute a due process violation unless the criminal defendant can show bad faith on the part of the police. Arizona v. Youngblood, 488 U.S. 51, 58 (1988). The Magistrate Judge found that Petitioner had not produced any evidence showing that the police acted in bad faith. Petitioner argues that his detailed account of the testimony and statements from witnesses demonstrate that the police did act in bad faith. Officer Ritter testified at the preliminary examination that he pulled the videotape as evidence. (PTr., 47). At trial he testified that he viewed the videotape of the parking lot at the time of the incident, but it did not appear on the tape because the camera was pointed in the wrong direction. (Tr. I, 193-94). Contrary to Petitioner's argument, the two statements by Officer Ritter are not necessarily inconsistent. Officer Dingman testified at trial that he viewed the videotape. Although the images were dark, he could see forms on the tape

that he recognized as people and vehicles, and concluded that the tape did not show the incident he was investigating. (Tr. I, 228-29). He stated that the camera pans in an unpredictable manner so that a person in the parking lot would never know at where the camera was focused at any given time. In this instance, the camera was not at the right spot at the right time. (Tr. I, 228). As is Meijer's custom, the tape was erased after two weeks. After reviewing the relevant portions of the transcripts and the Amended Petition, the court finds that Petitioner presents no competent evidence that the officers' testimony regarding what was on the tape was false, or that Officer Dingman's explanation of the manner in which the camera pans the parking lot was untruthful. Moreover, Petitioner's counsel cross-examined the several officers regarding some inconsistencies in their reports and testimony that either Petitioner "handed the gun off," or that the gun was grabbed from Petitioner.

**Ground IX**

As his ninth ground for relief, Petitioner claims that he was denied a fair and impartial trial due to extensive pre-trial publicity, where his counsel failed to request a change of venue and the trial court failed to sua sponte order a change of venue. Due process requires that a criminal defendant receive a fair trial by an unbiased jury. See Irwin v. Dowd, 366 U.S. 717, 722 (1961). The Supreme Court recognizes two types of jury prejudice: (1) presumed prejudice, where the setting of the trial is inherently prejudicial, and (2) actual prejudice, where the voir dire and extent of media coverage indicates a fair trial was impossible. See Ritchie v. Rogers, 313 F.3d 948, 952 (6th Cir. 2002). The Magistrate Judge concluded that Petitioner had shown neither presumed nor actual prejudice warranting a change of venue.

A court presumes prejudice only in the face of a "trial atmosphere utterly corrupted by

press coverage," id. at 952 (quoting Dobbert v. Florida, 432 U.S. 282, 303 (1977), or a "wave of public passion that would make a fair trial unlikely by the jury." id. At 953 (quoting Patton v. Yount, 467 U.S. 1025, 1040 (1984); and see Murphy v. Florida, 421 U.S. 794, 799 (1975) (courts presume prejudice only where proceedings are "entirely lacking in the solemnity and sobriety to which a defendant is entitled). Petitioner does not argue, and there is no evidence indicating, that his trial lacked decorum or solemnity.  He claims that extensive media coverage made a fair trial impossible.  Neither the relevant portions of the Petition nor Petitioner's exhibits support this assertion.  First, the newspaper accounts of the sentencing would have had no impact on the jury's finding of guilt.  Second, the trial judge specifically advised the jury not to read newspaper accounts or watch television reports regarding Petitioner's trial.  (Tr. II, 107).  Because there is no evidence suggesting that the jury ignored the judge's instructions, the media reports during trial did not influence the jury.  Moreover, these accounts were generally objective, expressing no opinion as to Petitioner's guilt or innocence.  The most extensive pre-trial coverage concerned Petitioner's escape from the Calhoun County jail and his subsequent apprehension.  While he was at-large,  three of the reports characterize the escapees as "dangerous" or "very dangerous."  (Ex. J to Petition).  Due process does not require that jurors are "totally ignorant of the facts and issues involved." Murphy, 421 U.S. at 799.  Petitioner presents no competent evidence that the reports of his jail escape created a "wave of public passion," or prejudice against Petitioner that would deprive him of unbiased jurors.

      The media coverage falls far short of the extent and type courts have found rose to the level supporting presumed or actual prejudice.  This is clearly illustrated by the cases cited by Petitioner in support of his claim.  For example, in Pruett v. Norris, 959 F.Supp. 1066

5

(E.D.Ark.,1997), the defendant's taped confession in which he referred to himself as a "mad dog killer" was aired several times by every television station in the immediate area; further, it was extensively reported that the defendant was a serial killer who had already been sentenced to two life terms and the death penalty in other states. Id. at 1080.  In Coleman v. Kemp, 778 F.2d 1487 (11th Cir. 1985), law enforcement officials announced that circumstantial evidence against the defendant was "overpowering," and that "there's no point in looking for anybody else."  The press reported that the defendants' fingerprints had been found at the scene of the crime; that he had confessed to a murder in another state; that his half-brother described in gruesome detail defendant's murder of six members of a family; and that his own mother remarked that mercy was inappropriate.  The accounts also described the defendant as exhibiting behavior indicative of remorselessness, and the efforts and statements of numerous attorneys to avoid being appointed to represent the defendant.  Id. at 1538.  The court concludes that the Magistrate Judge correctly found that Petitioner failed to establish actual or presumed prejudice

**Grounds X and XI**

In both grounds ten and eleven, Petitioner argues that the Michigan Supreme Court's holding in People v. Randolph, 648 N.W.2d 164 (Mich. 2000), should be applied retroactively to invalidate his armed robbery conviction.  He claims that the failure to apply Randolph retroactively violates his rights of due process and equal protection.

In People v. Sanders, 184 N.W.2d 269 (Mich. App. 1970), the Michigan Court of Appeals "began to expand the codified common-law requirements of robbery . . . it concluded that the defendant, having completed his theft "by stealth," was guilty of armed robbery because he fired a gunshot into the air to frighten off pursuers."  Randolph, 648 N.W.2d at 169.  With its

decision in Sanders, the Court of Appeals "began its shift toward the "'transactional approach.'" Id.  In Randolph, the Michigan Supreme Court held that the "transactional approach" must be abandoned, and cases applying a "transactional approach" to unarmed robbery are overruled. Id. at 167, 172.  Thus, the force used to accomplish the taking must be contemporaneous with the taking. The force used later to retain stolen property is not included.  Id.

A decision by a state supreme court does not apply retroactively when the "decision . . . establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed." Chevron Oil Co. v. Huson, 404 U.S. 97, 106 (1971).  Where a decision merely clarifies the law, a defendant's due process rights are violated if he was convicted of a crime whose elements were not met.  Fiore v. White, 531 U.S. 225, 229 (2001).   The Magistrate Judge found that the Randolph holding established a new principal of law, and therefore, should not be applied to Petitioner's armed robbery conviction.  Petitioner argues that the holding merely clarifies how the robbery statute is interpreted.  Under Chevron a decision that "overrules clear past precedent," is a decision that establishes new law, which is clearly the situation here.  The Michigan Supreme Court explicitly overruled thirty years of precedent.  Randolph,  648 N.W.2d at 167, 174.  Accordingly, the court agrees with the Magistrate Judge that Plaintiff is not entitled to habeas relief on the retroactivity issue.

## Conclusion

The court has read the Magistrate Judge's Report and Recommendation and conducted an independent review of the record. For the reasons discussed above, the court finds that the

Magistrate Judge's findings and recommendation are correct.  Accordingly, for the reasons discussed above, the court OVERRULES the Petitioner's Objections (docket #58), ADOPTS the Magistrate Judge's Report and Recommendation (docket #57); and DENIES the petition for writ of habeas corpus.

So ordered this 7th day of March, 2007.

      /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge